*309 OPINION OF THE COURT
Frank Vaccaro, J.
In this composite action and proceeding for a mandatory injunction "directing the defendant [Accreditation Board] to annul its determination withdrawing the accreditation of the plaintiffs surgical residency program * * * and further directing defendant to restore accreditation”, the court, after argument of the respective motions of the parties, granted to plaintiff a preliminary injunction against defendant in order to maintain status quo, based upon the urgency of plaintiffs continuance of its surgical program (see, decision and order dated July 30, 1986).
Vital to a consideration of the significant issues raised by the parties is a determination of defendant’s motion to dismiss plaintiff’s pleading for failure to state a cause of action upon the grounds that there is "A. No Common Law Cause of Action”, "B. No Breach of Contract Cause of Action” and "C. No Constitutional Cause of Action”. Each of the parties belabor their contentions with numerous authorities. However, the fact that this action does not fit within established concepts does not lessen the burden of this court to fashion, if warranted and feasible, an equitable remedy to soothe the cry of hurt that rings through its portals.
It is readily conceivable that plaintiff in 1948, then known as Jewish Hospital and Medical Center, in obtaining and maintaining accreditation of its surgical program throughout the years, including the years of its merger with St. John’s Episcopal Hospital in 1983, had to make substantial investments of funds and incur substantial expenditures.
As alleged by plaintiff in its complaint, "The Hospital [Jewish and St. John’s] will suffer irreparable harm due to the withdrawal of the surgical residency program’s accreditation which will jeopardize the Hospital’s ability to have its attending physicians continue to admit their patients at the Hospital”.
This court, at its level, will refrain from viewing plaintiffs complaint under the doctrine of "State Action” nor expand the doctrine to embrace the allegations of plaintiff’s complaint. However, this court does not hesitate to declare that there is a "State Interest” in the welfare, security and protection of the rights of its citizens, if such rights have been abused in any manner. Aside from the capital investment of plaintiff, the State must concern itself with the need and *310 continuance of hospitals to service communities that are vitally dependent on such hospitals for their medical care and well-being and particularly in life-sustaining emergencies when time is an unexpendable factor.
The State recognized its "State Interest” in the enactment of Public Health Law article 28. In the preamble (§ 2800) entitled "Declaration of policy and statement of purpose”, the Legislature declared "Hospital and related services * * * of the highest quality, efficiently provided and properly utilized at reasonable cost, are of vital concern to the public health”.
It is noteworthy that when the Health and Hospitals Corporation (HHC) was created to serve a specific health function in the City of New York, that corporation was not free to act as it deemed best, even though the Legislature in its enabling act gave power to the HHC to "employ officers, executives, management personnel * * * [to] formulate * * * policies, aims, standards * * * [to] administer * * * hospitals * * * [and] to fix their qualifications and prescribe their duties” and further specifically provided that to the extent that "this act [is] inconsistent with the provisions of any other law * * * this act shall be controlling” (McKinney’s Uncons Laws of NY §§ 7385, 7405).
Interpreting this legislative enactment, the court, in Harlem Hosp. Center Med. Bd. v Hoffman (84 AD2d 272, 280, 281, 282, appeal dismissed 56 NY2d 807), stated in language that is best applied to the principal issue herein "It is unlikely that the Legislature intended to create a corporation which would be free from supervision by the State in such a vital area as the health field * * * The Legislature, although establishing a separate corporation, did not intend that entity to be operated separate and apart from and unfettered by State controls * * * When HHC volunteered to participate in the State’s Medicaid program, the corporation acknowledged and accepted State’s jurisdiction. ” (Emphasis added.)
To paraphrase the language of the Harlem Hosp. case (supra), the Legislature in allowing for the Accreditation Board to be granted the power to confer and withdraw accreditation to the hospitals in the State of New York (10 NYCRR 405.7 [c] [1]) did not intend that the Accreditation Board shall operate separate and apart from and unfettered by State controls, nor that it be deemed to have the status of supplanting the regulatory framework established by the State. When the Accreditation Board volunteered to participate in the *311 State’s accreditation program with respect to physicians and hospitals and to collect fees, the Accreditation Board acknowledged the State’s jurisdiction and the "State’s Interest” in its hospitals and their vital role in public health.
It is thus incumbent upon this court, in enforcing the State’s control and fostering the "State’s Interest” to examine plaintiffs complaint to ascertain whether a cognizable grievance has been stated, assuming as the court must, on a motion to dismiss a pleading for lack of sufficiency, that all of the facts as alleged are true, without any concern as to whether they may be established on trial. (See, Matter of Bernstein v Toia, 43 NY2d 437; Kober v Kober, 16 NY2d 191; Rovello v Orofino Realty Co., 40 NY2d 633.)
The complaint contains two causes of action. If either or a composite of the two state a cause of action then defendant’s motion to dismiss must be denied (see, Gambar Enters. v Kelly Servs., 69 AD2d 297, 305, and cases cited therein).
Plaintiff, in substance, alleges that since 1948 it maintained an "approved residency training program to provide graduate medical education to medical school graduates in the specialized field of surgery”; that "hospitals cannot utilize surgical residents to provide any patient care services, unless such residents are in the surgical residency training program accredited by the [Accreditation Board]”; that "[i]n order to avail itself of the accreditation process provided by the [Accreditation Board] a hospital is required to pay a fee to [it and further fees * * * on a continuing basis”; that the Accreditation Board "delegated accreditation authority to its Residency Review Committee who after a site visit to the [plaintiffs] Jewish Hospital Division” withdrew accreditation citing nine alleged deficiencies; that the withdrawal of accreditation failed to comply with the Accreditation Board’s "rules and procedures” and that the withdrawal of accreditation was made "despite the fact that uncontradicted evidence in the record before [the Accreditation Board] supported the [plaintiffs] position that there were no deficiencies in these areas”.
This court holds that the complaint contains a cognizable grievance — a cause of action sustainable as a matter of law.
Accordingly, defendant’s motion to dismiss the complaint on the ground that it fails to state a cause of action is denied.
Defendant in its "Response to plaintiffs motion for summary judgment” alleges "Need for Discovery * * * Discovery is essential to enable defendant to prepare its defense, to *312 investigate whether [plaintiff] misrepresented facts * * * and covered up additional deficiencies * * * and to determine whether the conclusory allegations of Dr. Lerner have any basis * * * if defendant’s motion to dismiss is denied * * * defendant requests an opportunity to take discovery * * * before * * * summary judgment is considered.”
Accordingly, before this court will consider plaintiff’s motion for summary judgment, defendant’s request for discovery in aid of defeating plaintiff’s motion for summary judgment is granted. Determination of plaintiff’s motion will be held in abeyance pending defendant’s completion of proper discovery procedures, with the caveat that discovery of additional or new deficiencies may not post facto etch in stone the Accreditation Board’s withdrawal of accreditation nor deprive plaintiff of a reasonable opportunity to cure.
Both parties may submit to this court, on notice to each other, such additional papers and exhibits as they deem necessary and advisable for consideration by the court in the disposition of plaintiff’s motion for summary judgment.
The parties stipulated with respect to this court’s decision and order of July 30, 1986 that such order be amended to provide (a) that plaintiff will inform all candidates whose applications are entertained by being accorded interviews for the surgical residency program of the pendency of this lawsuit to overturn the Accreditation Board’s withdrawal of the program’s accreditation, and that a copy of the court’s decision and order of July 30, 1986 will be provided to such applicants; and (b) plaintiff shall give an undertaking in the amount of $5,000. If this undertaking has not as yet been furnished, plaintiff shall have 10 days within which to do so from the date of publication of this decision and order or within 10 days of the service of a copy of this decision and order with notice of entry thereof, whichever is the earlier date. The decision and order of this court dated July 30, 1986 is amended accordingly.
All other motions before this court will be either deemed withdrawn or held in abeyance pending determination of plaintiff’s motion for summary judgment.